[Civ. No. 6347. Fifth Dist. Dec. 4, 1981.]

CHARLES URLWIN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, K.C.G.
BUILDERS et al., Respondents.

Counsel

Ronald I. Gould for Petitioner.

Jerald P. Grainger for Respondents.

Opinion

**ANDREEN, J.**—Petitioner attacks two aspects of respondent board's decision upon reconsideration of this case.

1. The finding that his temporary total medical disability ended on October 14, 1980.

2. The finding that his earnings were such as to produce a rate for temporary disability of $49 per week for the period April 1, 1980, through October 14, 1980.

On January 28, 1980, petitioner injured his major wrist when he fell from a ladder at work.

The workers' compensation judge awarded petitioner temporary disability indemnity for the period January 29, 1980, and continuing at the rate of $93.33 per week upon a finding that his earnings were $140 per week. Upon reconsideration, respondent board terminated the medical temporary disability award as of October 14, 1980, and reduced the rate thereof from $93.33 to $49 per week for the period April 1, 1980, through October 14, 1980.

■ Respondent board's decision upon reconsideration incorporates by reference the petition for reconsideration of respondent Employee Benefits Insurance Company (hereinafter respondent Company). Petitioner urges that this practice violates Labor Code section 5908.5.[1] We agree.

*LeVesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 633-635 [83 Cal.Rptr. 208, 463 P.2d 432] holds that section 5908.5 does not preclude respondent board from denying a petition for reconsideration by memorandum order which adopts and incorporates the judge's report upon petition for reconsideration. In so holding, the court carefully distinguished a decision after reconsideration from a decision to deny reconsideration. The court stated that detailed findings of fact and statements of reasons are required in a decision after reconsideration to facilitate judicial review thereof and to help assure, "... that the appeals board avoid careless or arbitrary action by careful consideration of the facts and by reasoned analysis in support of any decision it may reach." (1 Cal.3d at p. 634.)

Our review of this case has been difficult because we have had to deal with an advocate's pleading rather than a well reasoned opinion of respondent board. The petition for reconsideration, which respondent board incorporated as its decision upon reconsideration, is conclusionary, argumentative, misstates the record, and relies upon asserted facts

---

[1]Section 5908.5 provides in relevant part: "*Any decision of the appeals board* granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award *following reconsideration shall be made by the appeals board* and not by a referee *and shall be in writing*, signed by a majority of the appeals board members assigned thereto, *and shall state the evidence relied upon and specify in detail the reasons for the decision.*" (Italics added.)
All future code references are to the Labor Code.

outside the record. We have found 12 distortions of the record in the incorporated petition for reconsideration.

As will appear below, respondent board committed error in its decision upon reconsideration. If respondent board had prepared its own decision, it is probable that at least some of the errors would have been avoided; the act of preparing an opinion, in and of itself, promotes careful consideration of the facts and a reasoned analysis in support of the decision.

The facts relevant to the termination of medical temporary disability on October 14, 1980, may be summarized as follows: By report dated August 22, 1980, Dr. Fryer concluded that petitioner's wrist injury was not permanent and stationary because he should regain some motion and have less pain up to 18 months after the date of injury. By report dated October 14, 1980, Dr. Crawford concluded that petitioner's injury was permanent and stationary. Drs. Fryer and Crawford reported for respondent Company. On November 17, 1980, Dr. Gaskell reported for petitioner the results of his September 8, 1980, examination; he concluded petitioner was permanent and stationary because conservative treatment was not likely to improve his status and further surgery was not indicated.

In his report upon the petition for reconsideration, the workers' compensation judge indicated that his award of continuing temporary disability was grounded upon the fact that petitioner was in a rehabilitation program. Upon reconsideration, respondent board concluded that temporary disability upon a medical basis ended on October 14, 1980, because there "... are no medical reports on record after October 14, 1980 that would suggest anything to the contrary."

Dr. Fryer's report would support a finding that petitioner was not permanent and stationary on October 14, 1980, because it indicates petitioner's condition would continue to improve until approximately July 1981. Thus, there is a conflict in the medical evidence as to whether petitioner was permanent and stationary on October 14, 1980. Since the workers' compensation judge did not purport to award temporary disability upon a medical basis, resolution of the conflict in medical evidence was for respondent board in the first instance. However, respondent board's decision on reconsideration is ambiguous as to whether said board recognized the conflict and resolved it in favor of more recent evidence or did not resolve the conflict because it failed to

recognize that a conflict existed. The ambiguity should be clarified upon remand.

The facts relevant to the issue of proper temporary disability rate after April 1, 1980, may be summarized as follows:

Only petitioner testified at the hearing. The judge's summary thereof follows: "APPLICANT WAS SWORN AND TESTIFIED on direct examination that he left high school in Canada in 1979. He was living on a ranch there for a period of two years and working. He earned $3.75 to $4.50 an hour working four or five hours a day during the school year. During the summer he worked perhaps 12 hours a day.

"He came back to San Luis Obispo and worked for Foster Freeze three or four months. He made minimum wages at that job. He also did some work at the Adams Motel in Pismo Beach, which his grandmother manages. He also lives there. He was paid $3.50 an hour. He worked 10 to 20 hours a week.

"His next job was at a gas station in Santa Maria where he also made minimum wages plus a small bonus depending on shortages.

"He had three years of woodshop while in high school. His ambition was to become a carpenter. He found the job with the defendant by going to the job site. He was first hired as a laborer and later he was doing framing and sheetmetal work. The project was a restaurant being built, Los Hermanos.

"Toward the end of the job, one person was laid off. He was led to believe he might be kept on for the next job, although there was no specific promise of such.

"He has not had any outside employment since the injury except for his grandmother's motel, and [sic] he has continued to live with his family."

By letter of October 20, 1980, to respondent Company, Mr. Gardner of K.C.G. Builders stated: "Charles Urlwin was employed on January 8, 1980, by K.C.G. Builders, as a carpenters helper and general laborer. He had applied for work through the State Employment Department which sent him to us to seek an open position. He was hired as a full time employee (40 hours per week) at $3.50 per hour. Had he not been

injured, his employment would probably [have] continued for the duration of that particular project. The job was completed on April 1, 1980.

"I would like it to be known that at no time after Mr. Urlwin's injury was he employed by K.C.G. Builders. In fact, to this date, Mr. Urlwin has not even called this office requesting that I rehire him, for any type of work.

"As far as open positions for employment at this time, there are none. As a matter of fact, at this time my work crew is at its smallest in three years.

"I hope this information is somewhat helpful. Please also find enclosed the additional information earlier requested.

"Thank-you for your work in this matter."

There is an unsworn employer's statement of wages dated October 15, 1980, stating that petitioner was hired on January 8, 1980, to work 40 hours per week at $3.50 per hour and that he was not a permanent employee. This document indicates that petitioner worked a total of 10 1/2 days and was paid a total of $267.75 between the week ending January 10, 1980, and January 24, 1980.

The trial judge's opinion on findings and award states in relevant part: "Applicant's earnings were $140.00 per week. There is no basis to speculate that applicant would revert to minimum wage when the job on which he was working ended. He was a young man and showed an aggressive effort to find work."

The trial judge's report on petition for reconsideration states in relevant part: "The defendant claims because the project on which the applicant was working would have ended (or in retrospect did end) within a few weeks, that the applicant would have necessarily reverted to minimal earnings. It is the experience of this Judge that people working in the building trade characteristically move from one job to another, and rarely, except during severely depressed areas usually go from one construction job to another, and it appears that this defendant was a substantial builder and would probably have carried applicant to his next job had he not been injured. The fact that applicant had found this construction job by the time that he was 20 years old negates the contention that he was not a willing or able employee in the labor mar-

ket. Obviously the defendant's point that applicant is taken out of the labor market by his injury is absurd and reflects upon his attitude or knowledge of the purpose of workers' compensation."

Upon reconsideration, respondent board concluded that the issue before it was petitioner's earning capacity at the time of injury because his employment was irregular. It relied upon Mr. Gardner's letter of October 20, 1980, to support a conclusion that the duration of petitioner's employment was contemplated to be for the duration of the construction project, and not beyond April 1, 1980. Respondent·board's opinion (by incorporation of the petition for reconsideration) states: "Defendant had requested applicant's attorney to produce some documentation of prior earnings in the form of W-2 slips, payroll check stubs, or any other material that would allow parties to make adjustments in benefits, if so indicated. This was never done. The applicant testified that his employment was sporadic, with all jobs being of a limited nature and earnings never beyond minimum standards. He, furthermore testified, that he had no reportable income to file with the Internal Revenue Service for the years 1978 and 1979.

"No evidence was submitted by applicant to support a finding of $93.33 per week after April 1, 1980. The assumption of continued employment after injury is purely speculative, and, in fact, denied by the employer. The Worker's Compensation judge had no evidence presented to him that applicant was aggressively seeking employment. Actually, the applicant had taken himself out of the labor market by requesting Vocational Rehabilitation."[2]

Respondent board awarded petitioner temporary disability indemnity at the rate of $49 per week after April 1, 1980, the statutory minimum (§ 4453). Since temporary indemnity is two-thirds of average weekly earnings during the period of disability (§ 4653), the $49 rate indicates that respondent board impliedly found petitioner's average weekly earnings to be $74 or less per week for the period April 1, 1980, to October 14, 1980.

---

[2]In its answer to the application for adjudication of claim, respondent Company did not deny petitioner's allegation of $140 per week actual earnings at the time of injury. Since earnings were not at issue, applicant's asserted failure of proof at the hearing is understandable. The statement that applicant had no reportable income to file with the "Internal Revenue Services [sic]" for years 1978 and 1979 is misleading. He was in school in Canada until 1979.

Respondent board applied section 4453, subdivision (d),[3] to determine petitioner's average weekly earnings. Petitioner does not adequately contend it was error to do so.

■ In applying subdivision (d), the employee's earning capacity at the time of injury must be estimated; this requires a prediction of what the employee's earnings would have been for the duration of temporary disability had he not been injured. The issue normally is whether the employee would have continued working at a given wage for the duration of the disability. (*Argonaut Ins. Co. v. Industrial Acc. Com.* (1962) 57 Cal.2d 589, 594-595 [21 Cal.Rptr. 545, 371 P.2d 281].)

All facts relevant to making the estimate must be considered. Such facts include the employee's ability to work, his age and health, his willingness and opportunities to work, his skill and education, the general condition of the labor market and employment opportunities for persons similarly situated. Respondent board may use its general knowledge as a basis of reasonable forecast. In weighing the evidence relevant to earning capacity, respondent board has a range of discretion, but the evidence must demonstrate that its determination is reasonable. (*Argonaut Ins. Co. v. Industrial Acc. Com., supra*, 57 Cal.2d at p. 595.)

■ The issue before respondent board was whether petitioner would have continued working full time for at least $3.50 an hour from April 1 to October 14, 1980, but for his industrial injury. Petitioner's testimony supports a reasonable inference, which was drawn by the judge, that petitioner would have continued working for respondent K.C.G. Builders but for the injury. There is a reasonable inference that petitioner was a good worker; he was hired as a laborer, but allowed to do framing and sheet work after only three weeks. He was led to believe he might be kept on for the next job. He was not laid off when another employee was toward the end of the present project.

The employer's unsworn letter of October 20, 1980, is not contrary to this finding. The statement that petitioner's employment would probably continue for the duration of the particular project is not a

---

[3]Section 4453, subdivision (d), provides: "(d) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his injury, due consideration being given to his actual earnings from all sources and employments."

prediction that his employment would end with the project. The fact that the employer had no positions open in October 1980 does not support an inference petitioner would have lost his job in April 1980 without the injury.

Even if it is assumed that petitioner would have lost his job with respondent K.C.G. Builders on April 1, 1980, the issue of whether he would have found another construction job or other full-time employment at $3.50 per hour remains. Petitioner's employment history supports the judge's implied conclusion that petitioner would have found other full-time employment at such a wage. Petitioner was clearly willing to work; he worked four to five hours a day while going to school and twelve hours a day in summer. After moving to California, he managed to find employment. He was motivated to be a carpenter.

Petitioner's employment history also supports an inference that his earning capacity at the time of injury was $3.50 per hour or $140 per week. He was employed full time at that wage when injured. He had worked for this amount and more in the past. His employment at minimum wages for Foster Freeze and the gas station is understandable in light of petitioner's recent move from Canada. It was supplemented by part-time work at a motel. The minimum wage in 1979 was $2.90 per hour. (29 U.S.C. § 206.) Petitioner only recently became available for full-time employment.

Respondent board's conclusion that petitioner's earning capacity at the time of injury was $74 or less is not supported by substantial evidence. Respondent board must give due consideration to petitioner's actual earnings from other employment (§ 4453, subd. (d)), but it failed to do so. (See *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 898 [83 Cal.Rptr. 591, 464 P.2d 47].)

■ Although the referee's findings are not binding on the board, where as here they are supported by ample and credible evidence they are entitled to great weight, because of the judge's advantage of being able to observe the demeanor of the applicant. (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312 [90 Cal.Rptr. 355, 475 P.2d 451].)

Respondent board exceeded its jurisdiction in rejecting the trial court's finding of $140 per week earning capacity; there is a lack of substantial evidence to sustain its finding of minimum earnings. (See

*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978].)

The decision after reconsideration dated March 6, 1981, is annulled and the cause is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion.

Zenovich, Acting P. J., and McIntosh, J.,* concurred.

A petition for a rehearing was denied December 29, 1981.

---

*Assigned by the Chairperson of the Judicial Council.