[Civ. No. 66523. Second Dist., Div. Five. Apr. 20, 1983.]

MORRIS YAVITCH et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and
DANICA HODGES, Respondents.

---

---

COUNSEL

Shields, Anderson & Garrison and Lawrence L. Tobin for Petitioners.

Milan Moacanin for Respondents.

---

OPINION

**FEINERMAN, P. J.**—Petitioners Morris Yavitch and Continental Insurance Company seek an order compelling the Workers' Compensation Appeals Board (Board or WCAB) to annul its stay of WCAB proceedings pending the outcome of Los Angeles Superior Court number C-344346, to annul the rescission of the trial judge's findings and order of June 29, 1982, and thereafter to determine the petition for reconsideration on its merits. We treat the petition as a petition for writ of mandate. As we shall explain, petitioners are entitled to relief.

FACTS

Respondent/applicant Danica Hodges filed a workers' compensation claim alleging a psychiatric injury arising out of the termination of her employment as a housekeeper/practical nurse for the wife of her employer, Morris Yavitch. The petition alleged that the injury occurred on October 9, 1980, when the applicant was "forceably removed from the premises and insulted by representatives of my employer."

The petitioners, Morris Yavitch and his workers' compensation insurer, Continental Insurance Company, denied any industrial injury and the matter was tried.

The applicant testified as follows: She worked for Morris Yavitch as a nurse, cook, driver and housekeeper during the summer of 1980. On October 9, 1980, many men, including the police, came to the Yavitches' home while the applicant was preparing breakfast, and told the applicant she would have to leave the house in five minutes. After October 9, 1980, the applicant did not work due to her mental problems.

Applicant called Jeffrey Pop as a witness. He testified that he was the attorney for the conservators of the Yavitches' estate. A temporary conservatorship was established on October 8, 1980, and the coconservators of the estate went to the Yavitches' home on October 9, 1980, to terminate the applicant's employment. Applicant's employment was terminated for several reasons, the most important being that she called an attorney into the Yavitches' home on October 6, 1980, who drafted and had executed a will and a deed for Mr. Yavitch's property as well as a purported personal services contract for applicant's lifetime. The Yavitches' home was worth $2 million, and the estate was very large. The will devised some of the Yavitch property to the applicant. It was alleged that the applicant influenced the Yavitches in a manner beyond her proper employment function.

Another reason for applicant's termination by the conservators was rooted in the fact that Mrs. Yavitch was hospitalized due to a fall and was found to have been suffering from malnutrition. The conservators believed that applicant's conduct was a factor precipitating the deterioration in Mrs. Yavitch's health.

At the time of the termination of applicant's employment, the conservators called the police because the applicant's boyfriend, described as a "tough looking man," was on the premises.

A superior court complaint was filed by the Yavitch conservators on November 5, 1980, for rescission of the employment contract, will, and quit claim deed, for an order quieting title, based on fraud and undue influence, and for damages for intentional infliction of emotional distress. The applicant thereafter filed a cross-complaint for breach of contract, wrongful interference with an advantageous business relationship, inducement of breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional and negligent infliction of emotional distress. The workers' compensation claim was filed on February 9, 1981. The WCAB trial was held on April 15, 1982, and a "take nothing" order was issued by the judge on June 29, 1982.

In reaching his decision, the judge stated:

"It is found that applicant was employed by Morris Yavitch on October 9, 1980. However, it is further found that she sustained no injury on that date affecting nervous system which would be considered to be a result of any employment activity or employment exposure. In this connection, there is nothing in the record which would justify us in considering that the employment with Mr. Yavitch has caused any of applicant's emotional problem[s].

"If in fact applicant has responded to certain events by way of emotional or neurotic reactions, this response was precipitated not by her employer but rather by the circumstances under which she was terminated from her employment. The actors in such termination were in no way a part of the employment

relationship; they were apparently persons who were acting in some other capacity, and if there is culpable conduct by a third party, that is a matter for determination in another forum.

"Also, applicant apparently called in a lawyer and initiated dealing by Mr. Yavitch with that lawyer. This cannot be considered a contemplated part of any employer relationship, but rather a personal effort by applicant apparently to profit by her position of companionship and confidence. It appears, although we need not decide the matter, that there was an issue of undue influence raised by the factual circumstances in this case but such an inquiry goes beyond our proper purview.

"Our role in evaluating this case begins and ends with a determination as to whether the employment itself was causally related to applicant's psychological state of mind. Her testimony showed that the employer was pleased with her work and that applicant was likewise pleased with her work. If she had not been discharged by the temporary conservators (or whatever their status was), she would undoubtedly have continued to work and not been upset emotionally. According to her testimony, she 'loved' the Yavitches and would have been happy to stay with them for the rest of their lives (allegedly whether or not she inherited any of their millions)."

In the applicant's petition for reconsideration, dated July 15, 1982, the applicant alleged that the evidence did not support the finding that she did not sustain an injury arising out of and occurring in the course of her employment.

The Board granted the applicant's petition for reconsideration and rescinded the judge's decision of June 29, 1982, on the ground that the workers' compensation action and the applicant's cross-complaint in the superior court action were based on the same facts and alleged the same injury, giving rise to the issue of whether the Board or the superior court had jurisdiction. This issue was raised by the Board itself. The applicant did not raise that issue in her petition for reconsideration.

Without further specificity as to its reasoning, the Board stated that "reconsideration should be granted pending a Superior Court decision of whether jurisdiction is proper in the civil courts." The Board's decision after reconsideration ordered that "[T]he Findings and Order of June 29, 1982, be, and [they are] hereby rescinded, with this matter returned to the trial level to be set for further proceedings and decision upon the filing of a Declaration of Readiness to Proceed, after final decision in the relevant civil action."

*Issues Presented*:

(1) Did the Board violate Labor Code section 5908.5 by its failing to state in detail the reasons for its decision?

(2) Where the parties proceeded to trial before the workers' compensation judge, did the WCAB err by annulling the judge's decision because a superior court action had been filed previously on the same facts as in the workers' compensation matter?

## DISCUSSION

■ Petitioner correctly asserts that the Board failed to comply with Labor Code section 5908.5 in its order granting reconsideration and decision after reconsideration. Labor Code section 5908.5 provides: "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision or award following reconsideration shall be made by the appeals board . . . and shall state the evidence relied upon and specify in detail the reasons for the decision." The purpose of this section is to both sufficiently apprise the parties of the grounds for its decision and "to assist the reviewing court to ascertain the principles relied upon by the lower tribunal, to help that tribunal avoid careless or arbitrary action, and to make the right of appeal or of seeking review more meaningful." (*Evans* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 753, 755 [68 Cal.Rptr. 825, 441 P.2d 633]; *Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889, 893 [83 Cal.Rptr. 591, 464 P.2d 47].)

Here, the Board only notes that in January 1981 the applicant filed a cross-complaint in the superior court alleging intentional and negligent infliction of emotional distress, and that the causes of action in the cross-complaint allege the same injury and are based on the same facts as presented in the compensation claim filed on February 10, 1981. The Board concludes, "Hence, the question of which forum has jurisdiction over the matter is an issue. The Board believes that reconsideration should be granted pending a superior court decision on the question of whether jurisdiction is proper in the civil court."

We find that the Board's conclusion does not provide an adequate rationale for its decision to annul the trial judge's findings and to stay all WCAB proceedings pending the outcome of the superior court action and hampers this court's review of the matter.

■ Moreover, from a substantive standpoint, we find error in the Board's decision. Construing the Board's language as concluding that the superior court retained exclusive jurisdiction to determine whether subject matter jurisdiction was properly before the superior court or the WCAB, even though the WCAB matter had already been tried by a workers' compensation judge, we find that the Board's determination was incorrect.

There are two types of jurisdiction relevant here, exclusive subject matter jurisdiction, and "precedential jurisdiction," or the jurisdiction to determine

subject matter jurisdiction. (*Sea World Corp.* v. *Superior Court* (1973) 34 Cal.App.3d 494, 497 [110 Cal.Rptr. 232].)

The WCAB and the superior court have concurrent precedential jurisdiction to determine the threshold question of subject matter jurisdiction, namely, whether a cause of action comes within workers' compensation laws, and, thus, within the exclusive jurisdiction of the Board. (*Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 83 [293 P.2d 18].) Where two tribunals have such concurrent jurisdiction to determine jurisdiction, "the question of which shall have exclusive [subject matter] jurisdiction shall be determined by the tribunal whose jurisdiction was first invoked, and proceedings in the tribunal whose jurisdiction was subsequently sought will, if not voluntarily stayed, be halted by prohibition until final determination of the jurisdictional question where jurisdiction was first laid." (*Taylor* v. *Superior Court* (1956) 47 Cal.2d 148, 149 [301 P.2d 866].) "[W]here several courts have concurrent jurisdiction over a certain type of proceeding, the first one *to assume and exercise* such jurisdiction in a particular case acquires an exclusive jurisdiction." (*Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 597 [107 P.2d 1, 131 A.L.R. 276]. Italics added.)

■ While subject matter jurisdiction may not be waived, "precedential jurisdiction" may be waived, and a litigant may be estopped to assert lack of jurisdiction. (*Sea World Corp.* v. *Superior Court, supra,* 34 Cal.App.3d at p. 501.)

In *Sea World,* Sea World sought a writ of prohibition to prevent the superior court from proceeding to trial on the grounds that the WCAB had first obtained precedential jurisdiction, even though Sea World had moved for summary judgment in the superior court. The court denied Sea World's petition for writ of prohibition on the ground that "Sea World has waived, or is estopped to urge, objection to the jurisdiction which it has invited the superior court to exercise, which the superior court has exercised, which exercise has been followed by a suspension of proceedings before WCAB amounting to a waiver by that tribunal of its priority of right." (*Sea World, supra,* 34 Cal.App.3d at p. 503.)

In making its determination the *Sea World* court stated the following:

"The scholarly Bernard Witkin of the San Francisco Bar discussed the principle and calls it an ' "Estoppel" to deny Jurisdiction "Invoked" ' (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 12, p. 537); he cites *San Martin* v. *Superior Court,* 169 Cal.App.2d 14 [336 P.2d 618]. In that case a husband filed an action for separate maintenance in Los Angeles County and obtained service on November 2. His wife filed an action for annulment in San Bernardino County the same day, but its process was not served until December 2. On the wife's application the San Bernardino court issued an order to show cause. The

husband appeared at the hearing and stipulated to an order. He also filed an answer and cross-complaint. Thereafter he moved unsuccessfully for dismissal of the San Bernardino action, and next filed a petition for prohibition. The court denied the petition, stating: '[A]lthough equity abhors a multiplicity of suits, . . . we are not disposed to restrain the respondent court from continuing to exercise jurisdiction over the action . . . filed by the wife in which action the husband has submitted to the jurisdiction of the court, . . .' (*San Martin* v. *Superior Court,* 169 Cal.App.2d 14, 19 [336 P.2d 618].)

"In *Young* v. *City of Los Angeles,* 86 Cal.App. 13, 17 [260 P. 798], the court stated: '''[W]here the court has general jurisdiction of the subject matter a lack of jurisdiction of the particular case may be waived by failure to take timely and specific objections, or an invocation of or submission to the jurisdiction may raise an estoppel to deny such jurisdiction.''''' (*Sea World, supra,* 34 Cal.App.3d at pp. 501-502.)

■ Applying the principles articulated in *Sea World,* we hold that the Board incorrectly annulled the judge's findings. The applicant chose to prosecute her case for a work-related injury and tried her workers' compensation case before a workers' compensation judge. The applicant never alleged that WCAB should defer to the superior court in determining whether the WCAB had subject matter jurisdiction to determine whether there was a work-related injury. Therefore, on reconsideration, the Board should have limited its proceedings to a review of the judge's findings on the merits to determine whether substantial evidence supported the finding of "no industrial injury."[1]

For the foregoing reasons, the Board's decision after reconsideration is annulled, and the matter is remanded to the Board for review of the applicant's petition for reconsideration on the merits.

Stephens, J., and Hastings, J., concurred.

---

[1]Petitioners have raised an additional issue of res judicata, alleging that the findings by the trial judge are "res judicata with respect to the parties herein." On remittitur, the appeals board must review the trial judge's findings on the merits. The decision after a remittitur is an original decision and not a decision following reconsideration. Thereafter, the Board's decision is subject to a petition for reconsideration. Thus, there has been no "final order" herein rendering the trial judge's findings res judicata. (Lab. Code, § 5901; *Nelson & Sloan* v. *Workers' Comp. Appeals Bd.* (1978) 79 Cal.App.3d 51, 55 [144 Cal.Rptr. 614].) The petitioners' contentions as to res judicata are, therefore, premature.