[No. F003227. Fifth Dist. Mar. 27, 1984.]

MEL OGDEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
UNDERWRITERS INSURANCE COMPANY et al., Respondents.

COUNSEL

Robert D. Patterson, Jr., for Petitioner.

Wagy, Bunker, Hislop & Lewis and Peter D. Lewis for Respondents.

OPINION

BROWN (G. A.), P. J.—

FACTS

On January 18, 1982, Manuel Perez Fuentes, an employee of petitioner, Mel Ogden, had toes on his left foot amputated and his left foot severely injured when, in the course of his employment, a piece of metal fell on his

foot. Fuentes filed an application for workers' compensation benefits, and after a hearing it was decided that he was entitled to the benefits.

However, because there was a dispute over whether or not petitioner's workers' compensation insurance policy had been canceled prior to the injury to Fuentes, further hearings were scheduled. After the completion of the hearings, the workers' compensation judge found that although the policy had been canceled, respondent Underwriters Insurance Company (Underwriters) was estopped from denying coverage to petitioner.

Respondent Underwriters filed a petition for reconsideration with the Workers' Compensation Appeals Board (Board). The judge who originally heard the case filed a report and recommendation regarding the petition for reconsideration. In this report the judge wrote, "It is recommended that the panel read all of the arguments set out by the parties and come to their own decision. [¶] The judge does have grave doubts as to whether or not his decision was correct on the issue of estoppel, that is were all of the elements for an estoppel proved." The Board granted the petition for reconsideration and issued a decision reversing the decision by the judge. The Board found that the policy had been canceled and that petitioner had failed to prove all of the elements needed to establish an estoppel. Accordingly, there was no insurance coverage available to the employer, Ogden, for the injuries suffered by his employee, Fuentes. We will annul the order and remand to the Board for further consideration of its finding of no estoppel and to make findings on the issue of agency.

Monolith Portland Cement Company (Monolith) hired petitioner, Mel Ogden, to remove an obsolete kiln and ball mill and dispose of the salvage. However, Monolith would not permit Ogden to undertake the operation without first obtaining proper insurance coverage, including workers' compensation insurance. Monolith referred Ogden to an insurance agent by the name of David Laube doing business as Insure-West in Victorville, a distance of approximately 60 miles from Monolith. Ogden contacted Laube by telephone and requested that Laube obtain workers' compensation insurance for Ogden. Ogden and Laube had no personal contact prior to the injury to Fuentes.

Laube submitted an application on behalf of Ogden for workers' compensation insurance directly to Market Insurance Corporation (Market Insurance) in Los Angeles, respondent Underwriters' general agent. However, for reasons which do not appear on the record, the application was denied. Laube then brokered the application through Kevin Lynch, who is the principal in a corporation known as Western Los Angeles Insurance Company, Inc. (Western).

Lynch resubmitted Ogden's application to Market Insurance, and the application was accepted and a workers' compensation insurance policy was issued by respondent Underwriters with effective dates of between February 18, 1981, and February 18, 1982. The policy was delivered to Lynch, who delivered it to Laube, who delivered it to Ogden. Ogden paid the premium in advance on the workers' compensation policy but had no contact with anyone except Laube concerning the policy. He knew nothing of Lynch, Western or Market Insurance until after the injury to Fuentes.

Laube had submitted Ogden's application to Lynch, and Lynch gave it to Market. The application contained Ogden's correct address in Rosamond but did not include a zip code. Ms. Gloria Dumkel, an underwriter for Market Insurance, obtained a zip code from Western and added it to the face of the policy. However, the zip code which Western gave Dumkel was for Victorville, the location of the offices of Laube, rather than Rosamond, the residence and business location of petitioner, and was therefore incorrect.

Because of the hazardous character of Ogden's operation, Dumkel of Market Insurance required an onsite inspection. She engaged insurance consultants by the name of Jensen & More, Inc. of Bakersfield to make such an inspection. Their representative reported to Market that despite numerous efforts he had been unable to make contact with Ogden and could not locate the job site. Laube, on the other hand, testified that he had been contacted several times by a representative of Market Insurance seeking directions to the job site and had given the representative explicit directions to the job site.

In April 1981 two of petitioner's employees were injured and their claims were considered and paid by respondent Underwriters. Communication concerning the claims of these employees took place between Market Insurance and Bobbie Ogden, petitioner's wife and bookkeeper, during a period of several months following the cancellation of Underwriters' policy.

On May 8, 1981, Market Insurance mailed to petitioner, at his address in Rosamond (the address with the wrong zip code), a voluntary payroll audit statement with a notation that the report must be returned prior to June 3, 1981, to avoid cancellation of the policy. Apparently because of the incorrect zip code, the audit statement was not received by Bobbie Ogden until June 1, 1981. She immediately completed the statement and returned it the same day. Because of the warning about cancellation, she phoned Laube's office and inquired whether the audit had been received in time to prevent cancellation. She was told that Laube's office would check with Underwri-

ters and if she was not notified of any problem she could assume that the policy remained in effect. She was never notified of any problem.

The notice of cancellation was mailed on May 27, 1981. The sole reason for cancellation of the coverage was the failure to complete an onsite inspection. The notice of cancellation was mailed to petitioner's address in Rosamond, using the Victorville zip code. Both Bobbie Ogden and petitioner testified that it was never received.

Market Insurance delivered a copy of the cancellation notice to Kevin Lynch of Western. Lynch testified that he notified Laube by telephone of the cancellation but did not notify him in writing or provide him with a copy of the cancellation notice. Laube testified that he was not notified of the cancellation until after the injury to Fuentes on January 18, 1982. A return premium was due to petitioner by reason of the cancellation but it was not delivered until November of 1982.

Diana Olson, who was a claims supervisor for Warner Insurance Group (the part of Underwriters which handles the claims), was responsible for overseeing the claims that had been filed by the two employees who had been previously injured. She was not aware of the cancellation of the policy until after the injury to Fuentes. Olson telephoned Dumkel to confirm coverage upon receiving notice of the injury to Fuentes. Olson testified that Dumkel questioned if Ogden knew of the cancellation because of the fact that there was a subproducer involved. Olson was also aware of the fact that correspondence sent to the Rosamond address did not elicit immediate responses and that she would receive quicker responses if she sent the correspondence to Bobbie Ogden at an address in Mojave.

## DISCUSSION

Labor Code section 5908.5 requires that a decision of the Board "shall state the evidence relied upon and specify in detail the reasons for the decision." Cases involving section 5908.5 have applied this section in a literal fashion. (See, e.g., *Yavitch* v. *Workers' Comp. Appeals Bd.* (1983) 142 Cal.App.3d 64 [190 Cal.Rptr. 793]; *Solomon* v. *Workmen's Comp. Appeals Bd.* (1972) 24 Cal.App.3d 282 [100 Cal.Rptr. 899].) ▪ The purpose of this requirement is "to assist the reviewing court to ascertain principles relied upon by the lower tribunal to help avoid careless or arbitrary action and to make the right of appeal more meaningful. [Citations.]" (*Burbank Studios* v. *Workers' Comp. Appeals Bd.* (1982) 134 Cal.App.3d 929, 936 [184 Cal.Rptr. 879].)

▪ The Board's discussion regarding the cancellation of the policy was sufficient to comply with Labor Code section 5908.5. The Board quotes

extensively from the "Summary of Evidence of the Hearing" and the cancellation provisions of the policy itself. The Board then explains that the policy was canceled in the manner provided in the policy itself and therefore the cancellation was effective even though petitioner never received the cancellation notice. We agree.

■■■ However, the Board failed to comply with the requirements of Labor Code section 5908.5 with regard to the issue of agency and the issue of whether or not petitioner had proven all the elements necessary to establish estoppel.

■ The Board's "Opinion and Order Granting Reconsideration and Decision After Reconsideration" is totally silent regarding any determination as to whether or not Laube, doing business as Insure-West, and/or Lynch (Western) were agents of Underwriters (see Civ. Code, § 2295; Ins. Code, §§ 31, 33) or independent contractors. There is no statement of legal principles governing such a relationship or of the facts applied to those principles. Since Underwriters can only act through agents or independent contractors, and to prevail petitioner must establish an agency relationship between Laube and/or Lynch and Underwriters, this issue is required to be addressed by the Board.

■ Returning to the issue of estoppel, the Board's decision leading to the conclusion that Underwriters is not estoped to deny coverage is patently inadequate. The totality of the discussion is: "Moreover, we are not persuaded that defendant Ogden has sufficiently established all of the elements necessary to justify a finding that Defendant Underwriters should be estopped from denying coverage. In the Petition for Reconsideration counsel for Defendant Underwriters urged as follows:

" 'It is essential in applying the equitable doctrine of estoppel that the party asserting application of the doctrine must have been ignorant of the true state of facts at the same time the party against whom the doctrine is to be applied must have known the full truth of the facts to which his conduct, declarations or representations related.

" 'Underwriters Insurance Company was ignorant of the fact that it apparently had the incorrect zip code for Ogden. . . . Underwriters Insurance Company was ignorant of the fact (if it be) that Ogden did not receive the Notice of Cancellation. . . .

" ' . . . . . . . . . . . . . . . . . . . . . . .

" 'The important point here is that Underwriters Insurance Company was

ignorant of several facts while Ogden knew of the incorrect zip code or at least had the means of acquiring such knowledge. . . .

" '. . . . . . . . . . . . . . . . . . . . . . . . . .

" 'There is absolutely no evidence that Underwriters Insurance Company or Market Insurance Corporation at any time with the express intention to deceive Ogden misrepresented anything to Ogden. The record is simply devoid of any such conduct.

" 'The record is also silent on any conduct of Underwriters Insurance Company or Market Insurance Corporation amounting to constructive fraud.

" '. . . . . . . . . . . . . . . . . . . . . . . . . .

" 'The fourth element, namely, that the party attempting to assert the doctrine of equitable estoppel must have relied upon such conduct and/or representations is likewise not supported by the evidence.'

"Based on our review of the record, including the foregoing, reconsideration will be granted to rescind the Finding of June 22, 1983, and find that Defendant Underwriters' Insurance Company is not estopped to deny coverage and that Defendant Ogden was not insured for workers' compensation purposes by Underwriters at the time of the injury alleged herein."

As is evident, the Board's discussion consists entirely of quotes from respondent's petition for reconsideration. Obviously, a party's arguments are not evidence, and the quotations do not refer to any evidence. Instead, the quotes consist of conclusions about what the evidence proved and statements that there is no evidence to support some of the elements of estoppel.

Regarding the "in detail" statement as to why the Board rejected petitioner's assertion of estoppel, the Board's decision states, "Based on our review of the record, including the foregoing [quotes from Underwriters' petition for reconsideration], [we] find that [Underwriters] is not estopped to deny coverage . . . ."

In *Urlwin* v. *Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 466 [178 Cal.Rptr. 758] the Board's decision incorporated by reference parts of respondent's petition for reconsideration. This court stated: "Respondent board's decision upon reconsideration incorporates by reference the petition for reconsideration of respondent Employee Benefits Insurance Company

(hereinafter respondent Company). Petitioner urges that this practice violates Labor Code section 5908.5. We agree." (*Id.*, at p. 469; fn. omitted.)

In the opinion we stated that "The petition for reconsideration, which respondent board incorporated as its decision upon reconsideration, is conclusionary, argumentative, [and] misstates the record . . . ." (*Ibid.*) Because the Board had incorporated the statements from the petition and not written its own opinion, when the court examined one of the other issues in *Urlwin,* which involved a conflict in the evidence, the court found the Board's decision to be "ambiguous as to whether said board recognized the conflict and resolved it in favor of more recent evidence or did not resolve the conflict because it failed to recognize that a conflict existed." (*Id.*, at pp. 470-471.)

In the instant case, a similar problem exists. The Board's decision on the estoppel issue consists almost entirely of quotes from respondent's petition for reconsideration. It is certainly possible to reach more than one conclusion as to an estoppel based upon the evidence in this case. From the Board's decision, however, it is not possible to tell how the Board dealt with this conflict and why it did so. The Board's decision presents only the respondent's side of the story, without explaining why it rejected appellant's arguments and the findings of the workers' compensation judge below. (See *Ascough* v. *Workmen's Comp. Appeals Bd.* (1971) 21 Cal.App.3d 248, 256, 258-259 [98 Cal.Rptr. 357].)

■ Compliance with Labor Code section 5908.5 is of particular significance in this case because there is evidence which could establish an estoppel. (See *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 203 [65 Cal.Rptr. 287, 436 P.2d 287].)

Examples of evidence which could give rise to an estoppel include the following facts. Petitioner states he never received a notice of cancellation prior to the injury to Fuentes. This is probably due to the fact that the zip code which respondent had as part of petitioner's address was incorrect. Laube was the one who omitted the zip code from the original application, and Western was the one that gave Market Insurance the incorrect zip code when Market Insurance requested the zip code.

Underwriters operated under at least three hats: Underwriters, Market Insurance, and Warner Insurance Group. Although these companies essentially consist of different arms of the same company, communication between the three was poor. Diana Olson, an employee of Warner Insurance Group (the adjusting arm of Underwriters) testified that she did not learn of the cancellation until after the injury to Fuentes. However, in the meantime

she had been handling claims from the two previous accidents to petitioner's employees and had communicated with petitioner concerning these claims. Although petitioner attempts to argue that this action by Olson would serve to confirm Ogden's belief that the policy was still in effect, it could also be argued that because the previous claims had occurred while the policy was in effect the company had an obligation to continue to process the claims irrespective of the subsequent cancellation of the policy and therefore the processing of the claims does not support an estoppel.

Another fact lending itself toward a finding of estoppel is that Gloria Dunkel, who was the insurance underwriter who handled petitioner's insurance for Market Insurance, after the injury to Fuentes, questioned whether or not Ogden actually knew of the cancellation because of the subproducer (Laube).

Another set of facts which could possibly give rise to an estoppel surrounds the audit statement that Bobbie Ogden filled out and returned to the company in June 1981. Apparently because of the wrong zip code, the audit statement was delivered two days before it was due back to Market Insurance's office. Because the audit statement said that the failure to return the audit within the time specified could result in a cancellation of the policy, Bobbie Ogden telephoned Laube's office and inquired whether or not the audit had been received in time to prevent cancellation. She was told that Laube's office would check, and if she did not receive any notification of a problem she could assume that the policy remained in effect. She was never notified of any problem. These facts are made more significant when one considers the fact that Ogden's only contact regarding this insurance was with Laube, and Ogden knew nothing of Western or Market Insurance.

One other fact which weighs toward a finding of estoppel is that because the policy was canceled, petitioner was entitled to a refund for the prepaid premium. However, he did not receive the refund until approximately a year and a half after the policy had been canceled and 10 months after the injury to Fuentes.

The order is annulled and the cause is remanded to the Board for further consideration in accordance with this opinion.

Zenovich, J., and Hanson (P. D.), J., concurred.